Filed 1/20/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| In re M.F. et al., Persons Coming Under the Juvenile Court Law. | H049128<br>(Santa Clara County<br>Super. Ct. Nos. 20JD026518,<br>20JD026519) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.P.,<br><br>        Defendant and Appellant. | |


J.P. (mother) is the mother of M.F. and S.S. (together, the children), who were taken into protective custody in July 2020 after their younger sibling, R.S., suffered traumatic head injuries while in the care of J.F. (father). R.S. died of her injuries on July 6, 2020. During the dependency proceedings, numerous continuances due at least in part to the COVID-19 pandemic significantly delayed the jurisdiction and disposition hearings, which took place, respectively, in February and May 2021. At the disposition hearing, the juvenile court found there was a substantial risk of detriment to the children if returned to mother's care, ordered their removal from her physical custody, and ordered family reunification services for her while bypassing reunification services for

father. Recognizing that the subsequent, six-month review hearing would have fallen after the 12-month statutory deadline (see Welf. & Inst. Code, §§ 366.21, 361.49),[1] the court granted the unopposed request by the Santa Clara County Department of Family and Children's Services (department) to combine the six-month and 12-month review hearings.

On appeal from the disposition order, mother contends that in setting the combined review hearing, the juvenile court deprived her of the full period for reunification authorized by statute—reducing the maximum time for which she may receive reunification services from 18 to only 12 months and violating her due process rights. She also asserts ineffective assistance of counsel based on her trial counsel's failure to object to the combined review hearing and prior delays. She does not challenge any other aspect of the disposition order. The department counters that mother's claim is either moot or not ripe for review and asserts, in any event, that the juvenile court did not err in setting the combined review hearing in compliance with statutory timelines.

In supplemental letter briefs requested by this court, both sides subsequently addressed this court taking judicial notice of the minute order from the combined review hearing—which took place while the appeal was pending—for the limited purpose of determining whether the subsequent proceeding and associated orders render any of mother's arguments on appeal moot. The department later filed a separate request for judicial notice and motion to dismiss the appeal as moot, following the continuance of oral argument in this case, during which time the juvenile court held the 18-month review hearing and returned the children to mother on a plan of family maintenance. Mother opposes the motion to dismiss the appeal and asserts that because the dependency case is ongoing, the trial court's decision to combine the six-month and 12-month review

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

2

hearings may limit her receipt of future reunification services in the event the children are again removed from her custody.

As explained below, we conclude that, in light of the strict statutory limits set out in the dependency scheme, mother has failed to establish error with respect to the challenged order combining the six-month and 12-month review hearings. To the extent that mother complains more broadly that despite the recent return of the children to her custody she faces the potential loss of a full and fair opportunity to reunify (in the event the children are removed again) due to the juvenile court's application of the statutory time limits, we conclude that claim is not yet ripe for review. We reject mother's ineffective assistance of counsel claim because mother has not shown on this record that her trial counsel's failure to object to the setting of the combined review hearing was deficient or prejudicial. Finally, for the limited purpose of analyzing mootness, we take judicial notice of the clerk's minute orders from the combined six-month and 12-month review hearing and from the 18-month review hearing. We deny the motion to dismiss the appeal as moot.

Because mother otherwise does not challenge the children's removal or the reasonableness of the court-ordered reunification services, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Section 300 Petition and Prior Referrals*

M.F. and S.S. were born in 2016 and 2017, respectively. Their younger sibling, R.S. was born in 2019. R.S. was eight months old when she suffered multiple nonaccidental, traumatic head injuries while in father's exclusive care during an overnight visit for the weekend of July 4, 2020. Mother and father were not living together at the time but mother reported they were trying to coparent, and father would sometimes watch the children when her family members were not available. However, mother acknowledged that under a no-contact restraining order issued in January 2020,

3

father was not supposed to have the children that day. The restraining order allowed him only supervised visitation with the children.

Mother disclosed that father had been violent with her but never with the children. Prior referrals to the department had occurred in September 2016 and in August and November 2019. Both parents had agreed to participate in voluntary services with the department after the August 2019 incident to address domestic violence in their relationship. They began participating in more intensive, informal supervision services with the department following the November 2019 incident, which had resulted in father's arrest on domestic violence charges after he pushed mother while she was holding R.S. Mother had sought a restraining order and custody of the children after the incident.

On the weekend of July 4, 2020, mother left the children to celebrate the holiday with father's family. She left M.F. at paternal grandmother's home and brought S.S. and R.S. to father. Mother did not stay with S.S. and R.S. that evening and believed they would be safe with father. Father kept S.S. and R.S. overnight and drove them the following afternoon to the paternal grandparents' house for a barbeque. When they arrived, R.S. had blood and foam coming out of her nose and was unresponsive. Father called 911 while paternal grandmother tried to resuscitate her; father then drove R.S. to the nearest fire station. Paramedics administered CPR before transporting R.S. to the hospital; she was later transferred to the intensive care unit at Lucile Packard Children's Hospital. Police officers placed M.F. and S.S. into protective custody on July 5, 2020. Father was arrested on July 6, 2020, and charged with child abuse with an enhancement for inflicting great bodily injury. Months later, after the release of the coroner's report on R.S., father was charged with homicide.

On July 7, 2020, the department filed a juvenile dependency petition (petition) on behalf of the children under section 300, subdivisions (b), (c), (f), and (j). The petition alleged that the children's sibling R.S. sustained traumatic, nonaccidental head injuries

4

while in father's exclusive care, resulting in her death, and that mother failed to protect the children by placing R.S. and S.S. in father's unsupervised care despite a protective order that allowed only supervised contact with him. It also alleged the parents had a history of exposing the children to domestic violence and that father had a history of substance abuse that contributed to his inability to safely parent the children. On July 10, 2020, the juvenile court found a prima facie showing had been made on the petition and ordered that M.F. and S.S. remain out of the custody of their parents and in a temporary, emergency out-of-home placement. The court ordered supervised visitation and services for both parents. The court set a jurisdiction hearing to be held on July 31, 2020.

*B. Jurisdiction Hearing and Intervening Delays*

The jurisdiction hearing, originally set for July 31, 2020, did not take place until February 25, 2021, when the juvenile court held that the children were subject to the jurisdiction of the court and set the matter for disposition. We briefly summarize the intervening delays and reports submitted by the department.

1.  <u>July 31, 2020 Hearing</u>

In a family team conference held in mid-July, mother asked that the children be placed with her and indicated she would access mental health services for herself and the children. She believed her only mistake was leaving R.S. and S.S. with father. Mother and father both preferred for the children to be placed with relatives during the dependency, and the department began evaluating relative placements.

At the first setting of the jurisdiction hearing, the department requested a three-week continuance to obtain the medical records and incident reports related to R.S., which it asserted were critical for the social worker to complete a thorough investigation. Mother did not object to the continuance. The juvenile court granted the request and continued the jurisdiction hearing to August 21, 2020. Separate, supervised visitation began for each parent for two hours, twice a week, and was reported in detail in the addendum.

5

### 2. August 21, 2020 Hearing

For the hearing on August 21, 2020, the department submitted the jurisdiction/disposition report and several addenda to the report in support of jurisdiction. The department sought another three-week continuance because it still had not received certain medical records needed to make disposition recommendations, including the coroner's report and the medical report from the hospital's child abuse expert who had treated R.S. According to the clerk's minute order, the juvenile court granted the department's request and continued the hearing to October 6, 2020.

### 3. October 6, 2020

In September 2020, the department received the medical report from Lucile Packard Children's Hospital board certified child abuse specialist, Dr. Melissa K. Egge, who provided her medical opinion regarding R.S.'s injuries. Dr. Egge opined that the findings supported a diagnosis of abusive head trauma, including impact to R.S.'s face and acceleration-deceleration forces seen in severe whiplash injury, most likely sustained on July 4, 2020, sometime after R.S. awoke. After receiving Dr. Egge's report, which indicated R.S.'s injuries occurred in father's exclusive care, the department transitioned the children to placement with their maternal grandparents.

In additional reports submitted for the continued hearing, the department recommended the juvenile court sustain the petition under the asserted provisions of section 300. The department recommended that the children be removed from both parents, family reunification services be provided to mother, and that father be bypassed for reunification services pursuant to section 361.5, subdivision (b)(4), for having caused the death of R.S. through abuse or neglect.

Mother requested a continuance of the hearing in order to review the reports and discuss the recommendations with her attorney. Father joined in the request for a continuance. He noted certain items, including the coroner's report, were still outstanding. Father had retained an expert to conduct an independent assessment but

needed the coroner's report and other discovery to proceed. Based on its communications with the medical examiner, the department told the court the coroner's report would not be ready before November 2020.

The juvenile court found that the need for the coroner's report and additional discovery constituted extraordinary circumstances justifying a continuance of the disposition hearing for 60 days past the date of protective custody. (§ 352, subd. (b).) The court granted the parents' request for a continuance and set the jurisdiction and disposition hearing for November 19, 2020.

### 4. November 2020 and January 2021 Hearings

The juvenile court held continued hearings in November 2020 and January 2021 while the parties awaited the coroner's report. The department submitted three addenda during that time, providing updates on the children's placement in maternal grandparents' home, their participation in services and visitation with mother and father, and on each parent's voluntary engagement in services.

At the continued hearing on November 19, 2020, father requested a further continuance, citing the need for the coroner's report; none of the parties objected. The juvenile court again found "extraordinary circumstances warranting a continuance beyond the normal timelines that we would have." The court continued the jurisdiction hearing to January 7, 2021, and denied a request by mother for the children to be returned to her custody pending the continued hearing. On January 7, 2021, on its own motion, the juvenile court continued the matter by clerk's minute order to January 26, 2021, stating in the order that good cause had been shown for the requested continuance and the continuance "is not contrary to the best interest of the child[ren]."

In the addendum report submitted for the continued January 26, 2021 hearing, the department indicated it had not received the coroner's report but had been informed on January 14, 2021 that it "had been delayed due to the Coronavirus pandemic and the increased number of cases" and "should be completed by late January 2021." On January

7

26, 2021, the juvenile court granted a further continuance by clerk's minute order, as requested by the department and "[b]y agreement of all counsel," and set the continued jurisdiction hearing for February 25, 2021.

### 5. February 25, 2021 Jurisdiction Hearing

On February 22, 2021, the department received the completed autopsy report on the cause and circumstances of R.S.'s death (coroner's report). The medical examiner noted a pattern injury suggestive of a slap or punch imprint on the left side of R.S.'s face and bruises on the back of her right shoulder, lower mid-back, and left buttock. The medical examiner concluded that the cause of death for R.S. was complications of abusive head trauma and the manner of death was homicide. Father was arrested on homicide charges in February 2021 after completing a visit with the children.

The hearing on juvenile court jurisdiction went forward on February 25, 2021; father was in custody, and the parties appeared via videoconference. The department filed a first amended petition, reflecting certain negotiated changes agreed to by the parties. Mother and father agreed to submit to juvenile court jurisdiction over M.F. and S.S. based on the amended allegations; however, mother disagreed with the department's disposition recommendation, wanted the children returned to her custody, and requested a contested hearing on disposition. The juvenile court admitted the jurisdiction/disposition report dated October 6, 2020, into evidence, along with the 13 addendum reports dated from August 21, 2020 to February 25, 2021. The juvenile court sustained the allegations in the first amended petition and found the children came within section 300, subdivisions (b), (c), (f), and (j).

The juvenile court initially provided two dates in late March 2021 for the trial on disposition. After clarifying the timeline required for the department to provide certain discovery requested by mother and for mother's therapist to review the discovery and prepare a report, the court stated it would have to continue the trial to May to accommodate the parties' timelines and courtroom availability. The court set the

8

disposition hearing for May 17, 2021. There were no objections to the date selected, though mother reiterated her request for the court to grant the social worker discretion to return the children to mother's care pending the disposition hearing; the court denied her request.

### C. Contested Disposition Hearing

At the contested disposition hearing on May 17, 2021, the department continued to recommend family reunification services for mother and no reunification services for father. The department's investigating social worker testified as an expert in risk assessment and the provision of services for families in dependency proceedings. The juvenile court considered the report and addenda which had been admitted at the jurisdiction hearing and admitted two additional addenda and other items submitted by the department. No other witnesses testified at the hearing.

The social worker testified that M.F. and S.S. were at risk of physical and emotional neglect if returned to mother's care based on the children's high needs and on mother's difficulty in managing their safety and responding to their emotional needs while attending to her own mental health. The social worker opined that mother was just beginning to engage in grief support and to cope with her triggers and the "complex trauma" she had experienced "at every facet of her life." The social worker noted that while mother had been honest with her therapist and service providers and wanted her children to return to her care and flourish, she was having difficulty managing appointments, engaging with service providers, and responding to the children's needs and behaviors when she felt overwhelmed.

After hearing closing arguments from the parties, in which mother and father both argued the department had not met its burden by clear and convincing evidence supporting removal and sought the return of the children to mother's custody under a family maintenance plan, the juvenile court found there was a substantial risk of detriment to the children's physical and emotional well-being if returned to mother's

care.  In an order dated May 17, 2021, the court ordered the children removed from mother's physical custody where they had resided when the petition was initially filed and ordered family reunification services for mother.  It granted discretion to the social worker to modify mother's visitation, including to increase frequency and duration and reduce the level of supervision as appropriate.  The court acknowledged mother's love for and bond with the children and encouraged her to continue her efforts to enable a transition in the future to family maintenance.  The court bypassed father for reunification services pursuant to section 361.5, subdivision (b)(4).

At the conclusion of the disposition hearing, the juvenile court directed the clerk to set the six-month hearing.  Counsel for the department noted that the "12-month date"[2] (measured by statute and based upon the date of the children's entry into foster care on September 5, 2020) was September 5, 2021.  The department requested that the six-month hearing serve as a combined six-month and 12-month hearing because the date set for the six-month hearing would be well past the 12-month date.  The court agreed and scheduled a combined "6 and 12-month review date" on November 2, 2021.  No party objected to the order setting the combined hearing.

On May 24, 2021, mother timely filed a notice of appeal from the May 17, 2021 disposition order.  Father did not appeal from the order and is not a party to this appeal.

---

[2] As we discuss *post*, the "statutory 12-month date" referenced by the department and the juvenile court is derived from the dependency statutory scheme, which provides, inter alia, that the review hearing is held "6 months after the initial dispositional hearing, *but no later than 12 months after the date the child entered foster care* as determined in Section 361.49, whichever occurs earlier." (§ 366.21, subd. (e)(1), italics added.)  It is undisputed in the record that M.F. and S.S. "entered foster care" within the meaning of section 361.49 on September 5, 2020 (60 days after they were taken into protective custody by Mountain View police officers on July 5, 2020).

## II.  DISCUSSION

The central issue on appeal is the juvenile court's order combining the six-month and 12-month review hearings.[3]  As explained below, after reviewing the statutory scheme governing the setting of status review hearings, we conclude that mother has identified no statutory justification or other authority to support her claim that the juvenile court erred in setting the combined review hearing and in so doing violated her due process rights.  To the extent mother contends the trial court's decision might ultimately result in a cumulative denial of adequate reunification services and penalize her for pandemic-related delays outside her control, we do not reach the issue as we conclude it is not ripe for review.  We further decide that given the applicable statutory framework governing the setting of review hearings, mother has not carried her burden on appeal to show ineffective assistance of counsel.  We lastly take judicial notice of the minute orders from the November 2, 2021 combined review hearing and the January 5, 2022, 18-month review hearing for the limited purpose of assessing mootness and explain why mother's claims have not been rendered moot by the subsequent proceedings in the juvenile court.

### A.  *The Juvenile Court Did Not Err in Setting the Combined Review Hearing*

Mother contends the juvenile court abused its discretion when it set the combined six-month and 12-month review hearing after disposition.  She asserts that absent the

---

[3] We exercise our discretion to consider mother's arguments regarding the combined review hearing and limits placed on the reunification timeframe, notwithstanding her failure to raise those issues or challenge the order setting the combined hearing in the juvenile court.  Though a party's failure to challenge a claimed error in the trial court may forfeit the right to present that claim of error to the appellate court (see, e.g., *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338), the forfeiture doctrine is not absolute.  (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)  We decline to exercise the forfeiture doctrine in light of both the lack of disputed facts at issue here and the novel legal issues posed by the COVID-19 pandemic.

numerous continuances and delays arising from the COVID-19 pandemic,[4] she "would have had the opportunity to have 18 months of reunification services."  The department maintains that the juvenile court did not err in setting the combined review hearing in compliance with statutory reunification timelines.

To assess this claim, we consider the statutory timelines established by the dependency scheme.  Although mother cites abuse of discretion as the applicable standard of review, we review issues involving the interpretation and proper application of the dependency statutes de novo.  (*In re M.F.* (2019) 32 Cal.App.5th 1, 18; *In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344.)

### 1.  Statutory Timelines

When a child is removed from a parent's custody and made a dependent of the court, the juvenile court ordinarily must order family reunification services for the parent and child.  (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843 (*Tonya M.*); see § 361.5, subd. (a).)  For a child under the age of three when first removed from the parents' custody (as was S.S. here, along with M.F. as part of a sibling group (see § 361.5, subd. (a)(1)(C)), reunification services are presumptively limited to six months. (*Tonya M.*, at p. 843; see § 361.5, subd. (a)(1)(B).)  The statute provides in pertinent part that for children in that age class, the juvenile court shall provide reunification services "for a period of 6 months from the dispositional hearing as provided in subdivision (e) of

---

[4] We accept, for purposes of our review in this appeal, mother's contention that at least some of the delays in this case were partially attributable to the COVID-19 pandemic.  We recognize the department's point that there is only one reference in the record relating the delays to the pandemic, and the record supports the conclusion that some of the delays were due to other considerations.  However, the reference to the pandemic in the record—which ascribed the delay in the coroner's report "to the Coronavirus pandemic and the increased number of cases"—is significant given that many of the continuances (sought by the department, and later by father and mother) centered on the need to obtain and consider the delayed documentation in order to proceed.

Section 366.21, but no longer than 12 months from the date the child entered foster care, as provided in Section 361.49." (§ 361.5, subd. (a)(1)(B).)

The date a child is deemed to have entered foster care is the earlier of the date of the jurisdictional hearing or 60 days after the date on which the child was initially removed from the physical custody of the parent." (§ 361.49.)[5] Furthermore, the juvenile court must hold a six-month status review hearing "6 months after the initial dispositional hearing, but no later than 12 months after the date the child entered foster care as determined in Section 361.49, whichever occurs earlier." (§ 366.21, subd. (e)(1).) The same 12-month date generally governs the 12-month review hearing or "permanency hearing,"[6] which under the statute "shall be held no later than 12 months after the date the child entered foster care, as that date is determined pursuant to Section 361.49." (*Id.* subd. (f)(1); see also § 366.21, subd. (e)(1)–(3).)

Notwithstanding the presumptive 12-month limit for reunification, the juvenile court has the authority to extend services up to a period of 18 months after the child's initial removal from parental custody if it is shown at the 12-month review hearing "that the permanent plan for the child is that the child will be returned and safely maintained in the home within the extended time period." (§ 361.5, subds. (a)(3)(A); see also § 366.21, subd. (g)(1) [authorizing a continuance "for up to six months for a permanency review hearing, provided that the hearing shall occur within 18 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian"]; *Tonya*

---

[5] As noted, *ante*, it is undisputed in the record that M.F. and S.S. "entered foster care" within the meaning of the statute on September 5, 2020, which is 60 days after they were taken into protective custody by Mountain View police officers on July 5, 2020. This date was used to arrive at September 5, 2021, which the juvenile court referred to as "the statutory 12-month date."

[6] The hearing the parties in this case refer to as the "12-month review hearing" is described in the statute as the "permanency hearing" (§ 366.21, subd. (f)(1)) or "12-month permanency hearing" (*id.*, subd. (e)(2), (3)) and also may be called the "12-month permanency review hearing." (See *Tonya M., supra,* 42 Cal.4th at p. 844.)

*M.*, *supra*, 42 Cal.4th at p. 845 [describing "three distinct periods and three corresponding distinct escalating standards for the provision of reunification services to parents of children under the age of three" running "roughly" from the jurisdictional hearing to the six-month review, from the six-month review hearing to the 12-month review hearing, and from the 12-month review hearing to the 18-month review hearing].)

Eighteen months is therefore generally considered the outer statutory time limit for reunification services. (*Denny H. v. Superior Court* (2005) 131 Cal.App.4th 1501, 1510 (*Denny H.*), superseded by statute on other grounds as stated in *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504; see *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864 (*Georgeanne G.*).) Indeed, the statutory scheme requires the permanency review hearing (when services have been extended beyond the 12-month review hearing) to occur "within 18 months after the date the child was originally removed from the physical custody" of the parent. (§ 366.22, subd. (a)(1).) In other words, if the court does not return the child at the 12-month review hearing and finds there is no substantial probability of return to the parent within 18 months of the initial removal from parental custody, "the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan. (§ 366.21, subd. (g).)" (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.)

A final consideration relative to these timelines is that the juvenile court has the authority to continue a hearing beyond the time limit specified by statute, provided the continuance is not contrary to the interest of the child and meets other specified criteria. (§ 352, subds. (a)(1)–(3), (b).) In weighing a continuance request, the court must "give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Id.*, subd. (a)(1).) It also must limit any continuance to "that period of time shown to be necessary by the evidence presented at the hearing on

the motion for the continuance." (*Id.*, subd. (a)(2).) Cases where a juvenile court has extended services beyond the 18-month statutory period typically have involved "truly exceptional situations in which some external factor thwarted the parent's efforts at reunification." (*Georgeanne G.*, *supra*, 53 Cal.App.5th at p. 864, fn. 9; accord *Denny H.*, *supra*, 131 Cal.App.4th at p. 1510 [citing case in which parent was hospitalized for all but five months of the 18-month reunification period].) Notably, the authority to continue a hearing pursuant to section 352 beyond the time limit "within which the hearing is otherwise required to be held" (§ 352, subd. (a)(1)) does not authorize the court to ignore or redefine statutory time limits. Nor does it allow the court to grant a continuance that would cause the disposition hearing to be held more than six months after detention. (*Id.*, subd. (b); see also Cal. Rules of Court, rule 5.550(a)(3).)[7]

## 2. Application of Statutory Timelines Given Delays in Disposition

Applying the statutory framework to the facts in this case, it is apparent that the juvenile court set the date of foster care entry, under section 361.49, as September 5, 2020 (60 days after the date on which the children were initially removed from the parent's physical custody when placed into protective custody by Mountain View police on July 5, 2020). As a result of the delays and continuances outlined above, the juvenile court held the May 17, 2021 disposition hearing more than eight months after the children's statutory entry into foster care, notwithstanding the statutory directive that "a continuance shall not be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days . . . after the hearing at which the minor was ordered removed or detained." (§ 352, subd. (b).)[8]

<hr>

[7] As noted *post*, the continuances of the jurisdiction and disposition hearings granted by the juvenile court in November 2020 and January 2021 (part I.B.4., *ante*) appear to be inconsistent with this limitation, though none of the parties raise the issue on appeal.

[8] As described above, the juvenile court made the findings of exceptional circumstances justifying a continuance pursuant to section 352, subdivision (b), and none of the parties objected to the continuances. The department notes in its respondent's brief

While mother does not contest the date the children entered foster care pursuant to section 361.49 and did not object to the juvenile's court's continuances of the disposition hearing, she contends the juvenile court erred nonetheless when it set the subsequent review hearing as a combined six-month and 12-month review because it "entirely failed to consider the impact of the delays due to the COVID-19 pandemic." Mother asserts that because the circumstances created by the pandemic were "outside the contemplation of the Legislature when it adopted the statutory parameters for reunification," the juvenile court's setting of the combined review hearing in strict adherence to the statute violated her fundamental due process right to the full timeline of reunification services. However, mother points to no authority—statutory or otherwise—to support the alleged power of the juvenile court to extend the dates for either the six-month or 12-month reviews. Critically, mother does not appear to suggest that the juvenile court misconstrued or misapplied the statutory timelines that govern review hearings. Nor could she. Our independent review of the relevant statutes confirms there is a statutory outer limit for when review hearings are to take place.

Section 366.21, which governs juvenile court review of the status of children found to be dependents of the court, makes plain the timing of the six-month review hearing is to be "held 6 months after the initial dispositional hearing, but no later than 12 months after the date the child entered foster care as determined in Section 361.49, whichever occurs earlier." (§ 366.21, subd. (e)(1).) This is consistent with the timeline for court-ordered services for children in S.S.'s and M.F.'s age category, which requires the juvenile court to provide reunification services "for a period of 6 months from the

---

that in order to comply with the statutory directive that the six-month review hearing be held "no later than 12 months after the date the child entered foster care" (§ 366.21, subd. (e)(1)), the six-month review in this case should have been held on or before September 5, 2021. Mother, on appeal, does not specifically challenge the date of the six-month hearing. Rather, she challenges the juvenile court's decision to combine the two hearings into a single proceeding.

dispositional hearing as provided in subdivision (e) of Section 366.21, but no longer than 12 months from the date the child entered foster care, as provided in Section 361.49." (§ 361.5, subd. (a)(1)(B).)

Mother's reference to the "three distinct periods and three corresponding distinct escalating standards for the provision of reunification services to parents of children under the age of three" (*Tonya M.*, *supra*, 42 Cal.4th at p. 845) essentially presumes sufficient time within the delineated, statutory limits following the jurisdiction and disposition hearings to allow for the maximum possible time for reunification services up to the 18-month hearing. (*Ibid.* [noting "the final [reunification] period [] runs from the 12-month review hearing to the 18-month review hearing" under section 366.22].)

To be sure, the dependency scheme contemplates disposition occurring close in time to the designation of foster care entry, thus typically allowing the parent to receive 12 months of reunification services prior to arriving at the statutory outer bound of "no longer than 12 months from the date the child entered foster care." (§ 361.5, subd. (a)(1)(B).) But when circumstances do result in delays, California courts regularly enforce the statutory limits. (See, e.g., *Denny H.*, *supra*, 131 Cal.App.4th at p. 1512 [holding that where "continuances [] ran the clock out to 22 months, the contested 12-month hearing became the 18-month permanency planning hearing"]; *In re Brian R.* (1991) 2 Cal.App.4th 904, 918 (*Brian R.*) [noting "the 12-month review became, by virtue of the passage of time, an 18-month permanency planning hearing"].)

Indeed, the California Supreme Court considered this question in *Tonya M.*, where it decided whether, at a six-month review hearing, the juvenile court should "consider the likelihood of reunification during the next six months after the hearing, or the likelihood of reunification in such time as remains until a potential 12-month review hearing, even if less than six months?" (*Tonya M.*, supra, 42 Cal.4th at p. 840.) In assessing the specific statutory language and broader statutory context, the court concluded that "[d]elays in the timing of one hearing should not affect either the timing of subsequent hearings or the

17

length of services to be ordered." (*Id.* at p. 846.) Where delays in the completion of a prior review hearing would leave only four months of reunification time before the next review date, as prescribed by section 366.21, the high court held the juvenile court "should consider only what the impact of those four months of services would be on the parent and child, not whether another hypothetical two months of services beyond the next prospective hearing might have a different or additional impact." (*Tonya M.*, at p. 846, italics omitted.)

We believe the outcome in *Tonya M.* reinforces the primacy of the statutory limits when faced with delays that threaten to encroach on a parent's reunification timeline. As the Supreme Court noted, "From the child's perspective, prompt, timely resolution *within 12 months* matters more than whether a full six months may have passed since the six-month review hearing. . . . [¶] Conversely, . . . [t]here is no rational basis for concluding that a parent whose six-month hearing is delayed to the nine- or 10-month mark should be eligible for an extension to the 15- or 16-month mark of either services or reunification consideration, while another parent whose six-month hearing is timely held must demonstrate a substantial probability of being able to reunite by the 12-month mark." (*Tonya M.*, supra, 42 Cal.4th at p. 847, italics added.)

Bearing in mind both the statutory framework and the Supreme Court's reinforcement of the statutory time limits for review hearings, we conclude the juvenile court properly applied the statutory scheme to the timeline in this case. Mother fails to identify any statutory justification for her argument that the juvenile court should have limited the initial review hearing solely to a six-month review despite the fact that the scheduled hearing date, November 2, 2021, would have fallen nearly two months *after* the statutory deadline for the 12-month permanency review hearing. (§§ 366.21, subd. (e)(1), 361.5, subd. (a)(1)(B).) Mother cites no binding authority for the juvenile court to

18

have done so (whether grounded in the dependency statutes or principles of due process), and our independent research has likewise found none.[9]

Consequently, we conclude mother has not carried her burden on appeal of showing error with respect to the challenged order combining the six-month and 12-month review hearings.

### B. *Mother's Broader Claim Regarding Reunification Services Is Not Ripe*

We recognize mother also makes a broader claim regarding her right to receive reunification services following disposition. She contends that in setting the combined six-month and 12-month review hearing, the juvenile court failed to consider that the provision of reunification services and court-ordered visitation was often "disrupted, delayed[,] and effectively rendered inadequate due to the pandemic." Yet she does not directly challenge the reunification services ordered at disposition. Rather, she seems to suggest that by ordering the combined review hearing, the juvenile court failed to fairly account for the COVID-19 pandemic's adverse impact on her ability to fully benefit from visits with the children and the therapeutic components of her case plan. To the extent that mother asserts that, due to the timing of the hearings ordered by the juvenile court, she *will* receive insufficient services over the course of the dependency if her children are again removed from her custody, we decide that claim is not yet ripe for review.

Ripeness is one facet of the prudential doctrine of justiciability. As a general rule, courts decide only justiciable controversies. (*Wilson & Wilson v. City Council of*

---

[9] We are not persuaded by mother's brief reference to the Judicial Council's "Emergency Rules Related to COVID-19," issued initially on April 6, 2020, as support for her arguments on appeal. As the department accurately points out, while emergency rule 6 did address juvenile dependency proceedings during the state of emergency related to the COVID-19 pandemic (see *In re M.P.* (2020) 52 Cal.App.5th 1013, 1016–1017 [reviewing emergency rules enacted during the state of emergency declared due to the COVID-19 pandemic]), its provisions did not provide for an extension of reunification time due to delays caused by the pandemic. Contrary to mother's claim, there is no basis in the emergency rules, or elsewhere, to conclude that the pandemic served as a "suspension of time" with respect to the statutory timelines.

19

*Redwood City* (2011) 191 Cal.App.4th 1559, 1573.) " 'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Ibid.*) The ripeness requirement prevents courts from issuing purely advisory opinions. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170 (*Pacific Legal*).) It is founded on "the recognition that judicial decision-making is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Ibid.*)

Mother's claim that she has been deprived of the maximum possible statutory period for reunification services, and that the COVID-19 pandemic has prevented her from fully benefiting from the services offered, rests on an assumption. She assumes that notwithstanding the return of the children to her custody at the 18-month review hearing (as noted in our discussion of judicial notice to assess the department's mootness claims, *post* (part II.D.)), if the juvenile court subsequently removes the children from her care once more, she will be deprived the full range of time for reunification under the dependency scheme. She argues the juvenile court abused its discretion in failing to consider the pandemic-related factors that caused the delay in the disposition hearing and in implementing court-ordered reunification services, and that her trial counsel was ineffective for failing to object. But at this moment, with her children returned to her custody, mother has failed to persuade us that she is "currently aggrieved." (*In re L.B.* (2009) 173 Cal.App.4th 562, 565 (*L.B.*).) Any arguable harm with respect to the provision of future, potential reunification services from the order to combine the six-month and 12-month review hearings has not yet occurred. (See *ibid*.)

*L.B.* is illustrative of the dilemma here. In that case, the dependency was delayed following the detention hearing while two of the children were being located. (*L.B.*, *supra*, 173 Cal.App.4th at pp. 563–564.) Eventually at the disposition hearing, the juvenile court sustained the petition, ordered family reunification services, and set the

20

next hearing as a 12-month review, rather than six-month review, reasoning that the time for reunification services ran from the detention hearing many months earlier. (*Id.* at p. 564.) The father appealed, contending the juvenile court erred in declaring the time period to run from detention. (*Id.* at p. 565.) He argued that because different standards guide the reunification decision at each of the distinct review periods, "the juvenile court in effect deprived him of six months of services and required the imposition of a more onerous standard in assessing [his] progress in reunifying." (*Ibid.*)

The appellate court dismissed the appeal in *L.B.* as unripe. (*L.B.*, *supra*, 173 Cal.App.4th at p. 566.) The court explained that, in setting the hearing as a 12-month review, the juvenile court did not order fewer or different reunification services, and as of the date of the appeal the juvenile court "ha[d] not yet committed the error" asserted by the father. (*Id.* at p. 565.) The court noted that "[i]f and when the juvenile court denies [f]ather reunification services to which he would be entitled if the court applied the proper statutory provision, he will be aggrieved, and may appeal that order." (*Ibid.*)

Mother seeks to distinguish *L.B.* insofar as the asserted error in that case was the juvenile court's designation of an erroneous starting point for the reunification services timeline, whereas in this case she contends the error lies in the juvenile court's failure to recognize that substantial delays caused by the COVID-19 pandemic have unfairly thwarted her time to reunify, should the children be removed again. Notwithstanding the different underpinnings for alleged error in each case, the process for evaluating ripeness is identical. Like in *L.B.*, the juvenile court's designation of the November 2, 2021 hearing as a combined six-month and 12-month review did not change in any way the reunification services it ordered. (*L.B.*, *supra*, 173 Cal.App.4th at p. 565.)

Nevertheless, unlike the court in *L.B.*, we do not dismiss mother's appeal. She has timely appealed the juvenile court's May 17, 2021 disposition order, and we must address the merits of the claims that are ripe for our review. We have concluded she has not shown error in the order combining the six-month and 12-month reviews, and we

21

therefore affirm it. But we expressly do not reach the merits of mother's broader claim with respect to the overall effect of the juvenile court's order on reunification services, leaving open the possibility she might raise this claim at a future date during the dependency.

While mother protests that requiring her to wait until the children are again potentially removed from her custody to challenge the juvenile court's decision by writ petition (see § 366.26, subdivision (*l*)(1); Cal. Rules of Court, rules 8.450–8.452) will only further delay resolution and permanent stability for the children, an appellate decision purporting to grant relief from harm that has not yet come to pass would undermine the fundamental principle undergirding the ripeness doctrine—that "judicial decision-making is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal*, *supra*, 33 Cal.3d at p. 170.) Deferring a decision on the merits until such time, if ever, that mother can present a factual record to support her argument that the challenged order shortened her reunification timeframe and adversely affected her opportunity to reunify will enable the reviewing court to evaluate the concrete effects of the juvenile court's order and grant, if appropriate, effective relief at that time.

### C. Mother's Ineffective Assistance of Counsel Claim Must Be Rejected

Mother next contends her trial counsel was ineffective for failing to object to the combining of the six-month and 12-month review hearings and to the dispositional delays related to the COVID-19 pandemic. She asserts there was no possible justification for her counsel's failure, which she maintains was prejudicial because it is reasonably probable the juvenile court would have granted her a separate six-month review hearing, just as it had repeatedly granted continuances in setting the jurisdiction and disposition hearings. The department responds that mother's counsel provided effective assistance given the "clear statutory reunification timelines in juvenile dependency cases."

22

A parent in a dependency proceeding is entitled to competent counsel and to judicial review of claims of ineffective assistance of counsel. (See § 317.5; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1660 (*Kristin H.*).) A parent seeking to establish ineffective assistance of counsel must show both that counsel failed to act in a manner to be expected of a reasonably competent attorney practicing in the field of juvenile dependency law, and that it is " 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Id.* at p. 1668.) When a parent seeks to assert ineffective assistance of counsel on direct appeal (as opposed to by writ of habeas corpus), appellate courts further limit their review to consider only those claims " 'where "there simply could be no satisfactory explanation" for trial counsel's action or inaction.' " (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463, quoting *In re Dennis H.* (2001) 88 Cal.App.4th 94, 98, fn. 1.)

Mother does not meet the standard for demonstrating ineffective assistance on direct appeal. She asserts there could be no tactical reason for her counsel's failure to object to the combination of the six-month and 12-month hearings since a parent must meet a higher standard to reunify at the 12-month review, and because it was her counsel's duty to stay abreast of the changes adopted by the Judicial Council in relation to the COVID-19 pandemic to ensure her rights were maintained in spite of the pandemic. Mother contends that by failing to object, she "relinquished" six months of potential reunification time.

But these assertions are not borne out by the record, which shows that counsel for all parties—including mother—affirmatively worked with the juvenile court to set hearing dates despite the difficult circumstances created by the delayed materials. While mother's counsel did not verbally address the effects of the pandemic on the proceeding's timeline, it was implicit in on-record conversations that the parties strove to minimize the delays even as they tried to accommodate the need to wait for documentation. Mother does not specify how her counsel might have leveraged any of the Judicial Council's

23

policy changes to persuade the juvenile court to abandon the statutory timeline, nor even suggest which changes adopted by the Judicial Council are relevant. As discussed *ante* (part II.A.), reunification services are subject to presumptive, statutory limits, which California courts regularly enforce. (See *Tonya M.*, *supra*, 42 Cal.4th at p. 843; § 361.5, subd. (a)(1)(B).) Juvenile courts faced with continuances may adjust review hearings in the face of statutory cutoffs. (See, e.g., *Denny H.*, *supra*, 131 Cal.App.4th at p. 1512 [noting the "contested 12-month hearing became the 18-month permanency planning hearing]; *In re Brian R.*, *supra*, 2 Cal.App.4th at p. 918 [same].) What is more, the California Supreme Court has affirmed juvenile court consideration of less-than-six-month time frames for review hearings, emphasizing that "[d]elays in the timing of one hearing should not affect either the timing of subsequent hearings or the length of services to be ordered." (*Tonya M.*, at p. 846.)

Set against this backdrop, and because it was undisputed that the 12-month statutory deadline was only a few months away at the time of the dispositional hearing, we decide it is unlikely that counsel's objection to an order combining the six-month and 12-month review hearings would have led the juvenile court to overlook the statutory limit for holding the 12-month permanency review hearing. We agree with the department that mother's counsel's failure to object to the combined review hearing did not "relinquish[]" six months of reunification time, because any extension of reunification services beyond the presumptive, six-month limit (§ 361.5, subd. (a)(1)(B)) is not statutorily guaranteed and therefore was not in any sense assured. We conclude that mother's attorney was not ineffective for failing to object to the order setting a combined review hearing, because it is not reasonably probable the court would have overlooked the impending statutory deadline. (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1668.)

*D. Judicial Notice to Assess Mootness*

We lastly address this court's request to the parties for supplemental briefing and the department's subsequent request for judicial notice and motion to dismiss the appeal as moot.

The briefing on appeal in this matter was completed on October 27, 2021, only one week before the combined six-month and 12-month hearing set for November 2, 2021. Due to the dynamic nature of juvenile dependency proceedings, a subsequent order of the juvenile court may render an issue on appeal moot. (*In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390.) While appellate courts rarely consider postjudgment evidence or evidence developed after the ruling challenged on appeal, such evidence is admissible for the limited purpose of determining whether the subsequent development has rendered an appeal partially or entirely moot. (*In re F.S.* (2016) 243 Cal.App.4th 799, 807, fn. 6 (*F.S.*), disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989; see also *In re Josiah Z.* (2005) 36 Cal.4th 664, 676.) The appellate court moreover may take judicial notice of the records of any court of this state, provided that each party has a reasonable opportunity to address the propriety of taking judicial notice and the tenor of notice to be taken. (Evid. Code, §§ 459, subd. (a)–(c), 452, subd. (d))

Here, because the basis of the appeal is the juvenile court's May 17, 2021 order setting the combined six-month and 12-month hearing, we requested supplemental briefing from the parties to address (1) whether they object to this court taking judicial notice of the juvenile court's minute order from the hearing held on November 2, 2021, and (2) whether any or all of mother's arguments on appeal have been rendered moot by the November 2, 2021 hearing and minute order. In response, the parties both acknowledged that we may take judicial notice of the subsequent hearing and associated order for the limited purpose described above but disputed whether mother's claims on appeal had been rendered moot.

25

On January 10, 2022, the department filed an additional request for judicial notice and motion to dismiss the appeal as moot, citing the 18-month review hearing held on January 5, 2022, in which the juvenile court returned the children to mother's care on a plan of family maintenance. The department urges that this court take judicial notice of the clerk's minute order from the 18-month review hearing for the purpose of ascertaining whether the appeal has been rendered moot by the proceedings of January 5.[10]

In light of these developments, we take judicial notice of the trial court's minute orders from November 2, 2021 and January 5, 2022, but limit the scope of our consideration of the order to whether the asserted error remains justiciable. (*F.S.*, *supra*, 243 Cal.App.4th at p. 807, fn. 6.) For purposes of our review, the juvenile court's November 2, 2021 minute order continued family reunification services for mother and set an 18-month review hearing to occur on January 5, 2022. The juvenile court's January 5, 2022 minute order returned the children to mother's care and custody on a plan of family maintenance and under the continuing jurisdiction of the juvenile court. The court set a family maintenance review hearing for June 21, 2022.

The critical factor in assessing mootness is whether the appellate court can provide any effective relief if it finds reversible error or if the purported error affects the outcome of subsequent proceedings. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60; *In re Dylan T.* (1998) 65 Cal.App.4th 765, 769.) Bearing in mind the statutory framework reviewed in detail *ante* and our conclusion that mother's broader claim regarding any possible, future

---

[10] On January 11, 2022, we issued an order deferring this court's ruling on the request for judicial notice and motion to dismiss for consideration with the appeal and directed the parties to be prepared to address the issues raised by the request for judicial notice and motion to dismiss at oral argument. On January 13, 2022, mother's counsel addressed the request for judicial notice and motion to dismiss at oral argument and declined to file written opposition. (Cf. Cal. Rules of Court, rule 8.54(a)(3).) Mother's counsel agreed it would be appropriate for this court to take judicial notice of the January 5, 2022 minute order but opposed the department's motion to dismiss the appeal as moot.

restrictions on reunification is not ripe for review, we disagree with the department's position that the subject minute orders moot mother's contentions.  The juvenile court's order returning the children to mother's custody and care at the 18-month hearing does not necessarily eliminate mother's potential future claim that strict application of the statutory timeline will have deprived her of reunification services to which she is entitled, should the children once more be removed from her custody.  We are also not persuaded that this purported error might not have the potential to affect further proceedings, although (as we have explained in our consideration of ripeness) we are unable to assess the merits of any such claim at this time.  Therefore, we do not dismiss the appeal as moot.

## III.  DISPOSITION

The judgment is affirmed.

_____
                        Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Wilson, J.

**H049128**
*In re M.F., et al.; DFCS v. J.P.*

Trial Court:      County of Santa Clara

Trial Judge:      Hon. Amber S. Rosen

Counsel:          Mansi H. Thakkar, by appointment of the Court of Appeal under the Sixth
                  District Appellate Program, for Defendant and Appellant.

                  James R. Williams, County Counsel, Laura E. Underwood, Deputy
                  County Counsel, for Plaintiff and Respondent.

**H049128**
*In re M.F., et al.; DFCS v. J.P.*